UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JELP BARBER,

    Plaintiff,

v.                                        Case No. 4:19cv214-MCR-HTC

BP EXPLORATION &
PRODUCTION, INC., et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jelp Barber, proceeding *pro se*, sues Defendants BP Exploration and Production, Inc., and BP America Production Co. (collectively "BP") for physical injuries he contends were caused by exposure to toxins associated with the Deepwater Horizon oil spill ("DWH Spill"). Pending before the Court is BP's motion for summary judgment based on Plaintiff's failure to present any expert on causation. Doc. 38. Upon consideration of the motion, Plaintiff's response, Doc. 40, BP's reply, Doc. 41, and the relevant case law, the undersigned finds the motion for summary judgment should be GRANTED.

I.      BACKGROUND[1]

On April 20, 2010, a massive and unprecedented oil spill occurred in the Gulf of Mexico when the Deepwater Horizon mobile offshore oil-drilling rig, operated by BP and located approximately 125 miles offshore of Florida, exploded.  During the months immediately following the explosion, over 90,000 people and 7,000 vessels were employed to address the DWH Spill.  The incident resulted in thousands of claims being filed against BP, which were originally consolidated in the Eastern District of Louisiana as part of the Deepwater Horizon multidistrict litigation (MDL No. 2179) and presided over by Judge Carl J. Barbier.

The MDL court approved a comprehensive Medical Benefits Class Action Settlement Agreement ("Settlement Agreement") for personal injury plaintiffs.  The Settlement Agreement provided a claims process for eligible class members who were diagnosed with a specified physical condition on or before April 16, 2012, and a separate litigation option for those seeking compensation for "Later-Manifested Physical Conditions" ("LMPCs"), defined as a physical condition diagnosed after the April 2012 cutoff date.  This separate litigation of claims is known as the "Back End Litigation Option" ("BELO").

---

[1] *See In re Deepwater Horizon BELO Cases*, No. 3:19cv963, 2020 WL 6689212 (N.D. Fla. Nov. 4, 2020) for a detailed discussion of the background of this litigation, the DWH spill, response and data collection, and the makeup and constituency of crude oil and dispersants.

Case No. 4:19cv214-MCR-HTC

Plaintiff initially filed this case in the Eastern District of Louisiana on December 3, 2018. At that time, Plaintiff was represented by attorneys Frank J. D'Amico, Jr., and Allen Lindsay, Jr. Plaintiff alleges that in July 2010, he worked as a clean-up worker performing response activities in the aftermath of the oil spill in Apalachicola and St. George Island.[2] Doc. 1 at 2. Plaintiff claims he was exposed to toxic chemicals while performing those activities and, as a result, was subsequently diagnosed with a variety of chronic conditions, including but not limited to, Granuloma Annulare. *See id.* at 14. Because Plaintiff's Granuloma Annulare was not diagnosed until September 5, 2017, it is an LMPC.[3] *See id.* at 15.

On May 8, 2019, the case was transferred to this Court. Doc. 7. On November 13, 2019, the case was stayed pending resolution of the First Trial Pool cases. Doc. 14. After those cases were resolved, the Court lifted the say and entered a Case Management Order ("CMO"). Doc. 16. Pursuant to the CMO, discovery closed on February 22, 2022, and Plaintiff was required to disclose expert witnesses within 210 days of the docketing date.[4] *Id.* at 16. The CMO provided that "[e]xpert witnesses not timely disclosed or whose opinions have been significantly modified

---

[2] In Plaintiff's response, he explains that from July 1, 2020, to July 19, 2020, he owned a shrimp boat called the Lady Louise, which was employed by Vessels of Opportunity to assist in locating crude oil discharged from the DWH Spill. Doc. 40 at 3.

[3] In Plaintiff's response, he explains that he developed a rash within days of being terminated from employment with Vessels of Opportunity and received a settlement from the MSA of $7,750.00 for that condition. *Id.* at 4.

[4] The deadlines in the February 22, 2021 CMO were subsequently extended by 45 days on April 8, 2021. Doc. 21.

Case No. 4:19cv214-MCR-HTC

or changed after discovery has ended, will normally not be permitted to testify at trial." *Id.* at 8.

On March 24, 2021, attorneys D'Amico and Lindsay moved to withdraw their representation of Plaintiff, Doc. 19, which the Court granted, Doc. 20. On May 20, 2021, the Court granted Plaintiff's request for additional time to obtain new counsel. Doc. 23. On June 15, 2021, attorney Charles David Durkee of the Downs Law Group appeared on behalf of Plaintiff. Doc. 24. On August 26, 2021, Durkee moved to withdraw his representation, Doc. 26, which was not opposed, and was, thus, granted, Doc. 27. On October 5, 2021, Plaintiff notified the Court of his intent to proceed *pro se*. Doc. 29.

On September 19, 2022, the case was stayed once again for the Court to resolve those BELO cases alleging certain ocular and sinusitis conditions. Doc. 33. That stay was lifted and the Court entered an amended CMO on May 9, 2023, setting Plaintiff's expert disclosure deadline for September 29, 2023. Doc. 35. Plaintiff did not disclose any experts. Doc. 38 at 3. Thus, on October 6, 2023, BP filed a motion for summary judgment on the ground that Plaintiff "has produced no evidence linking his specific injuries to toxic exposure." Doc. 38 at 2.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."). The moving party bears the burden of establishing that there is no genuine dispute of fact and that the plaintiff has failed to establish an essential element of the claim. *See Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To avoid summary judgment, the nonmoving party must then go beyond the pleadings and "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal marks omitted). However, summary judgment cannot be avoided through evidence that is "inadmissible at trial." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1313 (11th Cir. 2014) (quoting *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007)).

### III. ANALYSIS

As stated above, BP has moved for summary judgment on the grounds that without an expert, Plaintiff cannot establish his skin condition was caused by the DWH Spill. In his verified response to BP's motion for summary judgment, Plaintiff does not necessarily dispute that an expert is needed. Instead, he asks that (1) the Court revise its scheduling order and (2) deny BP's motion because his interrogatory responses and document production, which includes a letter from his dermatologist,

are sufficient to create a genuine issue of material fact. Both of these arguments are addressed below:

A.    <u>Request for More Time</u>

The crux of Plaintiff's request for more time is that he did not receive the Court's May 9, 2023 CMO until August 21, 2023, when he received a response to his August 16, 2023 letter, advising the clerk that he had not received anything from the Court since October 6, 2021 (other than the September 19, 2022 Order staying the case pending resolution of the ocular and sinusitis cases), and asking for a copy of the docket as well as all orders or other documents filed in the case from October 6, 2021, to September 19, 2022, and September 19, 2022 to present. Doc. 36. The clerk responded by sending Plaintiff a copy of the docket and three orders: (1) the September 19, 2022 Order staying the case; (2) the September 20, 2022, Order reassigning this case from Judge Jones to the undersigned; and (3) the May 9, 2023 CMO. A review of the docket shows that those three orders were initially sent to Plaintiff at 4927 Heathe Drive, Tallahassee, Florida 32309. That address was provided to the Court by attorney Durkee as Plaintiff's last known address when Durkee moved to withdraw representation. Doc. 26 at 2. It appears, however, that 4927 Heathe Drive is not Plaintiff's address, but that of his son-in-law, John Barley. Plaintiff, however, does not take issue with documents being sent to Barley and

never notified the Court that the address provided by Durkee was incorrect.[5] Regardless, despite the mail not being returned to the Court, Plaintiff contends that neither he nor Barley received the May 9, 2023 CMO when it was initially mailed.

Plaintiff, thus, asks to "be excused from failing to proceed in accord" with the May 9 CMO and "that the schedule be revised to provide [him] reasonable notice and opportunity to achieve the results contemplated by that schedule." Doc. 40 at 23. Under Federal Rule of Civil Procedure 16, a scheduling order may be modified for good cause and with the Court's consent. Fed. R. Civ. P. 16(b)(4). To establish good cause, Plaintiff must show the schedule cannot be met despite due diligence. *See e.g., Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998). Additionally, because Plaintiff seeks an extension of the CMO *after* the expert deadlines have passed, he must further establish excusable neglect *and* good cause. *See* Fed. R. Civ. P. 6(b)(1)(B) (requiring both a showing of good cause and excusable neglect if a motion is made after the time for acting has expired); Fed. R. Civ. P. 16(b)(4) (a "schedule may be modified only for good cause and with the judge's consent"). Here, the undersigned finds that Plaintiff has not established either excusable neglect or good cause to extend the May 9, 2023 CMO.

---

[5] In Plaintiff's notice of intent to proceed *pro se*, he asks to do so with assistance from his son-in-law. Doc. 29. In Plaintiff's response, he admits that Barley drafted the response. According to BP, Barley is a disbarred Florida attorney. Barley should ensure that his conduct does not contravene the ethics rules prohibiting the unauthorized practice of law.

Case No. 4:19cv214-MCR-HTC

First, according to Plaintiff, the next documents he received about this case after the September 19, 2022 stay order were written discovery requests from BP. BP served those discovery requests on Plaintiff on or about May 16, 2023, and in email exchanges Plaintiff and Barley had with BP's counsel regarding the discovery, BP told Plaintiff that its authority for seeking additional discovery was in the "operative CMO." Plaintiff, thus, was put on notice at that time that the stay had been lifted, and, at a minimum, that he needed to check on the status of the case. Plaintiff, however, failed to check the docket, which is publicly available, or make an inquiry of the clerk until more than two months later.

Second, even assuming Plaintiff did not get the May 9 CMO until August 21, he still had more than a month to disclose expert(s) or, at a minimum, file a motion for an extension of time. Plaintiff, however, waited until *after* BP filed a motion for summary judgment and almost three (3) months after receiving the May 9 CMO to request more time.

Third, it is unclear why Plaintiff needs an extension of time or how much time Plaintiff seeks. Plaintiff does not state, for example, that more time is needed for Plaintiff to find an expert. Indeed, there is no indication that Plaintiff intends to retain an expert, and nothing indicating that Plaintiff has taken any steps to retain an expert. Instead, as discussed below, while seeking an extension of the CMO, Plaintiff also argues that the motion for summary judgment should be denied because

genuine issues of material fact exist. Based on the above, the undersigned does not find good cause to extend the CMO.[6]

Finally, while not specifically requested by Plaintiff, the undersigned also does not find that the motion for summary judgment should be deferred or denied pursuant to Federal Rule of Civil Procedure 56(d). Under Rule 56(d), a court may defer or deny a motion for summary judgment, or allow additional time for discovery, if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Here, even accepting the Plaintiff's "verified" response as a Rule 56(d) affidavit, nowhere in the response does Plaintiff articulate what discovery he needs to be able to rebut the motion. *See Burns v. Town of Palm Beach*, 999 F.3d 1317, 1334 (11th Cir. 2021) (a Rule 56(d) movant "must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact"). "Failure to satisfy [the Rule 56(d)] burden is fatal to an argument that the district court granted summary judgment prematurely by failing to order or await the results

---

[6] Plaintiff also takes issue with the fact that he did not receive clarification regarding "the status of his obligations," particularly as it relates to the Corrected Amended and Revised Case Management Order, Doc. 342 (Master Docket), as mentioned in the Court's order of referral to Judge Jones. Doc. 30. This argument, however, is a red herring, as the CARCMO simply required the parties to select the 8 test cases for advancement to trial and was superseded by the May 9 CMO. In other words, Plaintiff had no obligations under the CARCMO and the CARCMO did not alter Plaintiff's obligations under the May 9 CMO.

Case No. 4:19cv214-MCR-HTC

of further discovery." *City of Miami Gardens,* 931 F.3d 1274, 1286 (11th Cir. 2019). Plaintiff also has not shown that he was diligent in pursuing any discovery. *See Exigent Tech. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 13010 (Fed. Cir. 2006).

    B.    <u>Genuine Issue of Material Fact</u>

In the response, Plaintiff argues that his answers to interrogatories and discovery responses "constitute sufficient evidence to create a genuine issues of material fact and establish a rebuttable presumption that the skin rash … was caused by [his] 19-day exposure to raw crude oil and toxic chemicals." Doc. 40 at 24-25. Specifically, Plaintiff believes the healthcare professionals he identified in discovery, including his dermatologist, Dr. Kovaleski, "could give expert opinion testimony that may be found sufficient" to establish said rebuttable presumption. *Id.* at 25. Plaintiff's argument misunderstands his burden for establishing general and specific causation.

For Plaintiff to succeed on his claims against BP in this case, Plaintiff must show BP caused his skin disease. The causation requirement in a toxic tort case involves a showing of general causation and specific causation. General causation is concerned with whether a "drug or chemical *can* cause the harm plaintiff alleges," that is, whether a chemical agent "increases the incidence of disease in a group."[7]

---

[7] Although there is a category of toxic tort cases which the Eleventh Circuit has recognized as not requiring a showing on general causation, namely those cases where a drug or chemical has been

*McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005). "Specific causation is established by showing that exposure to the allegedly toxic drug or chemical actually caused an individual plaintiff's injury." *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, 299 F. Supp. 3d 1291, 1306 (N.D. Fla. 2018). If a plaintiff does not present evidence as to general causation, there is no need for the court to address specific causation. *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) ("Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence.").

It is well settled that to establish general and specific causation, a toxic tort plaintiff must present admissible expert testimony. *Chapman*, 766 F.3d at 1316 ("To prove Fixodent caused Marianne Chapman's CDM, the Chapmans were *required* to have *Daubert*-qualified, general and specific-causation-expert testimony that would be admissible at trial to avoid summary judgment."); *McCLain*, 401 F.3d at 1237. Without such testimony, Plaintiff cannot create a material question of fact. *See id.* Thus, because legal causation can only be established through admissible expert testimony, numerous courts in this circuit and the Fifth Circuit in similar BELO cases, including this Court, have granted summary judgment after excluding a causation expert. *See e.g., In re Deepwater Horizon BELO Cases*, No. 3:19cv963,

---

recognized by the medical community as being toxic and capable of causing the injuries alleged by a plaintiff, *McClain*, 401 F.3d at 1239, this case does not fall into that category. *See In re Deepwater Horizon Belo Cases*, 2020 WL 6689212, at *12.

Case No. 4:19cv214-MCR-HTC

2020 WL 6689212, at *17 (granting summary judgment in first pool of test cases after excluding plaintiffs' sole general causation expert); 2023 WL 2711573 (N.D. Fla. Mar. 30, 2023) (granting summary judgment in ocular and sinusitis cases after excluding experts).

Even assuming Plaintiff's interrogatory responses or the letter from Dr. Kovaleski, produced during discovery, were sufficient under Federal Rule of Civil Procedure 26(a) or Federal Rule of Evidence 702, neither meets the causation standard. At best, Dr. Kovaleski and the doctors identified in Plaintiff's responses will opine that Plaintiff suffers from a chronic skin rash. None of the doctors purport to provide any opinion (assuming that they were even qualified to do so) on the cause of the rash. In fact, as BP points out in its reply, what Dr. Kovaleski initially wrote in a December 15, 2017 letter was that the "cause of granuloma annulare is unknown" and "numerous theories" have mentioned trauma, sun exposure, infections and thyroid disease as being potential causes, however, "no definitive proof has been shown for any of these." Doc. 41-4 at 1. After being prodded by Barley to submit a new letter "that eliminates any comment about what causes Granuloma Annulare," Doc. 41-5, Dr. Kovaleski signed a letter authored by Barley simply stating that he has diagnosed Plaintiff with Granuloma Annulare.[8] Doc. 41-

---

[8] In this letter, Dr. Kovaleski states that he diagnosed Plaintiff with Granuloma Annulare on September 13, 2010. Doc. 41-6. However, his prior letter states the diagnosis was made on

6 at 1. Like Dr. Kovaleski, the doctors identified in Plaintiff's interrogatory responses are simply his treating physicians, "who may possess information concerning the condition of [Plaintiff's] skin." Doc. 40-1 at 9-10.

Whether Plaintiff suffers from a skin condition is one issue; but even assuming he does, Plaintiff has offered nothing to show that the condition was caused by the DWH Spill. The fact that Plaintiff developed a skin condition shortly after his work on the DWH Spill is simply not enough. *See McCasland v. Pro Guard Coatings, Inc.*, 799 F. App'x 731 (11th Cir. 2020) (rejecting argument that a "reasonable jury could find a causal nexus as a matter of logical reasoning" based on plaintiff's development of medical problems after using Liquid Roof and breathing its fumes regularly). As this Court has previously held, without any admissible expert testimony on causation, no reading of Plaintiff's opposition, no matter how liberal, would create a genuine issue of material fact as to causation. BP is entitled to summary judgment. *See e.g., In re Deepwater Horizon Belo Cases,* 2020 WL 6689212 at *17 ("absent a qualified expert to testify about general causation, Plaintiffs cannot survive summary judgment").

---

October 13, 2010. Doc. 41-4. Adding to the confusion, in Plaintiff's response, he states that he was diagnosed with Contact Dermatitis on September 13 by Dr. Kovaleski, Doc. 40 at 2, and diagnosed with Granuloma Annulare in September 2017. Doc. 40 at 7. Plaintiff's complaint provides September 5, 2017, as the diagnosis date for Granuloma Annulare (Doc. 1 at 15) and it appears Plaintiff received compensation from the MSA for the Contact Dermatitis condition. Doc. 40 at 4.

Accordingly, it is RECOMMENDED:

1. That BP's Motion for Summary Judgment, Doc. 38, be GRANTED.

2. That judgment be entered in favor of BP and against the Plaintiff.

3. That the clerk be directed to close the file.

At Pensacola, Florida, this 29th day of November, 2023.

*s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.